IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| STEVEN W. WILEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No.: 07-CV-00542-JPG-CJP |
| | ) | |
| HONORABLE STEVE CRONIC, HALL | ) | |
| COUNTY SHERIFF; LIEUTENANT | ) | |
| RICKY FAGGE; and MID-FLORIDA | ) | |
| SECURITY GROUP, INC., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

This matter comes before the Court on the motion of defendants Steve Cronic ("Cronic") and Ricky Fagge ("Fagge") to dismiss the claims against them pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction (Doc. 17). Plaintiff Steven Wiley has responded to the motion (Doc. 27), and defendants Cronic and Fagge have replied to that response (Doc. 28).

**I.     Standard for Dismissal**

Challenges to personal jurisdiction are brought under Federal Rule of Civil Procedure 12(b)(2). Under Rule 12(b)(2), if there are material facts in dispute regarding the Court's jurisdiction over a defendant's person, the Court must hold an evidentiary hearing. *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002). At the hearing, the party invoking federal court jurisdiction bears the burden of proving by a preponderance of the evidence facts sufficient to support personal jurisdiction over the defendant. *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003); *Hyatt*, 302 F.3d at 713. Where the court rules on a Rule 12(b)(2) motion based solely on the written materials on file, the Court will construe all factual

disputes in the plaintiff's favor, and the plaintiff need only make a prima facie case showing that the Court has personal jurisdiction. *Purdue Research*, 338 F.3d at 782; *Hyatt*, 302 F.3d at 713.

**II.     Facts**

Viewing all uncontroverted allegations in the complaint as true and viewing all controverted facts in Wiley's favor, the Court finds the following facts for the purpose of this motion.

Wiley's current troubles began on August 6, 2005, when he sought help from the police department of Jerseyville, Illinois. When Wiley gave his social security number, Jerseyville Police Department personnel learned that there was an outstanding 1990 warrant from the Circuit Court of Hall County, Georgia, for his arrest for failing to appear. The warrant was based on Wiley's failure to report to the Probation Office and failure to pay a court-ordered fine following a criminal conviction in Georgia in 1989. Wiley had, in fact, paid the required fine but the warrant remained outstanding.

On August 9, 2005, the Jerseyville Police Department contacted the Sheriff's Office of Hall County, Georgia, to confirm the existence of the warrant. Cronic was the Hall County Sheriff and Fagge was the Sheriff's Office Warrant Officer. An employee of the Hall County Sheriff's Office responded shortly thereafter confirming the existence of the warrant and asking the Jerseyville Police Department to hold Wiley and let the Hall County Sheriff's Office know when he was ready to be picked up. Jerseyville police then arrested Wiley, and the following day, he waived extradition.

On August 11, 2005, the Hall County Sheriff's Office faxed a "prisoner move order" from Fagge to defendant Mid-Florida Extraditions, Inc., ("Mid-Florida") asking it to pick up Wiley in Jerseyville and transport him to the Hall County Sheriff's Office. Mid-Florida was a private

2

prisoner transport company regulated under the Interstate Transportation of Dangerous Criminals Act of 2000, 42 U.S.C. § 13726 *et seq.*; it was not affiliated with or controlled by Hall County or the Hall County Sheriff's Office. It supplied its own vehicles and equipment to transport detainees and charged the Hall County Sheriff's Office a fee of 75 cents per mile per individual transported.

The following day, August 12, 2005, Mid-Florida picked Wiley up from Jerseyville and began on a horrendous eight-day journey to Georgia. Wiley was in uncomfortable conditions and was not given his prescribed medications during the journey. The van driver's irresponsible driving style caused injury to Wiley, who at times was stranded with as many as ten other detainees in the unair-conditioned vehicle while it was broken down or while waiting for other detainees to be picked up or dropped off. He was not allowed to shower or change clothes for most of the trip and was not allowed proper sleeping accommodations. On August 20, 2005, Mid-Florida dropped Wiley off at the Hall County Detention Center.

While Wiley was in transit, on August 17, 2005, at the request of the District Attorney, the case against Wiley had been the subject of a *nolle prosequi* on the basis that it had been placed on the "dead docket" in 1992 and prosecution was no longer feasible. As a consequence, on August 19, 2005, the Hall County court dismissed the warrant for Wiley's arrest. The Hall County Sheriff's Office was notified of the dismissal of the warrant that day, and when Wiley arrived on August 20, 2005, he was immediately released.

As a consequence of the foregoing events, Wiley suffers from a knee injury and has incurred medical and travel expenses.

Wiley filed this lawsuit against Cronic, Wiley and Mid-Florida in July 2007 alleging Illinois state law causes of action for false imprisonment and negligence and federal causes of

action under 42 U.S.C. § 1983 for violations of various constitutional rights. Cronic and Wiley now ask the Court to dismiss the causes of action against them for lack of personal jurisdiction.

**III.     Analysis**

In a federal question jurisdiction case[1], to establish personal jurisdiction over a defendant, a plaintiff must show that (1) the Court's exercise of jurisdiction over the defendant comports with the Due Process Clause of the Fifth Amendment and (2) that the defendant is amenable to service of process. *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987). The defendants' motion focuses on the second inquiry – whether the defendants are amenable to service – so the Court need not address the Fifth Amendment due process issue.[2]

Federal Rule of Civil Procedure 4(k) governs whether a defendant is amenable to service of process by a federal court. Rule 4(k) states:

> **(k) Territorial Limits of Effective Service.**
> (1) *In General.* Serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant:

---

[1] Although the complaint asserts that Wiley is also relying on diversity jurisdiction under 28 U.S.C. § 1332, it does not plead a sufficient basis for such jurisdiction because it does not allege any party's citizenship. However, even if Wiley were able to establish this Court's diversity subject matter jurisdiction, this order's rulings that exercising personal jurisdiction over Cronic and Fagge would violate the Illinois Constitution would still apply and would still require the Court to dismiss Wiley's claims against them for lack of personal jurisdiction.

[2] When examining Fifth Amendment due process rights, courts tend to apply a relaxed version of the Fourteenth Amendment "minimum contacts" due process test announced in *International Shoe Co. v. Washington*, 326 U.S. 310 (1945), requiring that exercise of personal jurisdiction not offend "traditional notions of fair play and substantial justice." 4 Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1068.1 (2007) (citing *Willingway Hosp., Inc. v. Blue Cross & Blue Shield of Ohio*, 870 F. Supp. 1102 (S.D. Ga. 1994)); *compare United Rope Distrib., Inc. v. Seatriumph Marine Corp.*, 930 F.2d 532, 534 (7th Cir. 1991) (requiring sufficient contacts with the United States as a whole to satisfy Fifth Amendment Due Process Clause and leaving adequacy of contacts with particular forum state to be addressed as a venue or transfer question); *ISI Int'l, Inc. v. Borden Ladner Jervais, LLP*, 256 F.3d 548, 551 (7th Cir. 2001) (requiring contacts with United States as a whole).

(A) who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located;
(B) who is a party joined under Rule 14 or 19 and is served within a judicial district of the United States and not more than 100 miles from where the summons was issued; or
(C) when authorized by a federal statute.

(2) *Federal Claim Outside State-Court Jurisdiction.* For a claim that arises under federal law, serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant if:
(A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and
(B) exercising jurisdiction is consistent with the United States Constitution and laws.[3]

In this case, the only two possible sources for service authority are Rule 4(k)(1)(A) and Rule 4(k)(2).

    A.    <u>Amenability to Service Under Rule 4(k)(1)(A)</u>

Cronic and Fagge are not amenable to service under Rule 4(k)(1)(A). Under Rule 4(k)(1)(A), a defendant is amenable to service of process if he is subject to the jurisdiction of

---

[3]Prior to December 1, 2007, during the time when service was waived in this case, Rule 4(k) read:

**(k) Territorial Limits of Effective Service**
(1) Service of a summons or filing a waiver of service is effective to establish jurisdiction over the person of a defendant
(A) who could be subjected to the jurisdiction of a court of general jurisdiction in the state in which the district court is located, or
(B) who is a party joined under Rule 14 or Rule 19 and is served at a place within a judicial district of the United States and not more than 100 miles from the place from which the summons issues, or
(C) who is subject to the federal interpleader jurisdiction under 28 U.S.C. § 1335, or
(D) when authorized by a statute of the United States.
(2) If the exercise of jurisdiction is consistent with the Constitution and laws of the United States, serving a summons or filing a waiver of service is also effective, with respect to claims arising under federal law, to establish personal jurisdiction over the person of any defendant who is not subject to the jurisdiction of the courts of general jurisdiction of any state.

The 2007 revisions to Rule 4(k) were not intended to substantively change the rule.

Illinois courts. Illinois courts have personal jurisdiction over a defendant if (1) Illinois law grants personal jurisdiction, and (2) the exercise of personal jurisdiction would be constitutional under the Illinois and United States constitutions. *RAR, Inc. v. Turner Diesel Ltd.,* 107 F.3d 1272, 1276 (7th Cir.1997). The first requirement is subsumed by the second, however, because Illinois' long-arm statute authorizes personal jurisdiction to the maximum extent permitted by the United States and Illinois constitutions. 735 ILCS 5/2-209(c); *RAR*, 107 F.3d at 1276; *Kostal v. Pinkus Dermatopathology Lab., P.C.*, 827 N.E.2d 1031, 1036 (Ill. App. Ct. 2005).

In this case, the defendants argue that exercising jurisdiction over them would violate the Illinois Constitution, rendering Rule 4(a)(1)(A) inapplicable. Under the Illinois Constitution, "[j]urisdiction is to be asserted only when it is fair, just, and reasonable to require a nonresident defendant to defend an action in Illinois, considering the quality and nature of the defendant's acts which occur in Illinois or which affect interests located in Illinois." *Rollins v. Ellwood*, 565 N.E.2d 1302, 1316 (Ill. 1990).

In *Rollins*, the Illinois Supreme Court limited the contacts that could be considered toward establishing personal jurisdiction over the person. There the court held that asserting personal jurisdiction over a defendant on the basis of acts he took not on his own behalf but on behalf of his employer or principal violated due process guarantees contained in article I, section 2 of the Illinois Constitution. *Id.* at 1318. This principle is known as the "fiduciary shield doctrine." In *Rollins*, a police officer of the Baltimore, Maryland, police department had traveled to Illinois to take custody of a detainee for whom there was an outstanding warrant in Maryland. *Id.* at 1305. While in Illinois, the police officer allegedly committed a tortious act on the detainee, and the detainee sued in an Illinois court. *Id.* at 1305-06. The Illinois Supreme Court concluded that under the fiduciary shield doctrine, the Illinois constitution did not permit Illinois courts to

6

exercise personal jurisdiction over the police officer because the acts he committed in connection with Illinois were not to serve his own personal interest but to serve those of his employer or principal. *Id.* at 1318.

Wiley's response does not address the applicability of the fiduciary shield doctrine and has therefore waived any argument that the doctrine does not apply. Instead, Wiley argues that Mid-Florida was acting as an agent of Hall County when it transported him to Georgia. The Court is puzzled by this assertion, which appears to be irrelevant since Hall County is not a party to this case.

Furthermore, none of the allegations or evidence establishes that Mid-Florida served in an agency capacity for any other person or entity relevant to the events in this case such that its acts could be attributable to that person or entity for the purpose of establishing personal jurisdiction. An agency exists when "the alleged principal has the right to control the manner and method in which work is carried out by the alleged agent and . . . the alleged agent can affect the legal relationships of the principal." *Anderson v. Boy Scouts of Am., Inc.*, 589 N.E.2d 892, 894 (Ill. App. Ct. 1992). Whether an agency relationship exists becomes a question of law, not of fact, when the facts are not in dispute, as they are not in this case. *See id.*

In this case, as a matter of law there could be no agency relationship. Although the evidence shows that Cronic or the Hall County Sheriff's Office may have been responsible for paying Mid-Florida a per mile fee for transporting detainee and that Mid-Florida may have been subject to certain operating standards imposed by the Interstate Transportation of Dangerous Criminals Act of 2000, 42 U.S.C. § 13726 *et seq.*, nothing suggests that Cronic or Fagge controlled Mid-Florida's business operations or that Mid-Florida could affect the legal relationships of Cronic or Fagge such that Mid-Florida could be considered an agent of either of

7

them.  Mere allegations of agency are not sufficient in the face of uncontroverted evidence establishing an agency relationship does not exist.  In the absence of an agency relationship, Mid-Florida's acts in connection with the state of Illinois cannot be imputed to Cronic or Fagge to establish this Court's personal jurisdiction over them.

This Court's exercise of personal jurisdiction over Cronic and Fagge would violate due process guarantees of the Illinois Constitution.  All contacts in this case between Cronic and Fagge arose out of the performance of their official duties on behalf of Hall County, Georgia, and its courts, not on their own behalf.  Thus, under the fiduciary shield doctrine described in *Rollins*, using those contacts as a basis for exercising personal jurisdiction over those defendants would violate the Illinois Constitution's due process guarantees.  The record in this case reveals no other contacts between Cronic or Fagge and the state of Illinois, so this Court must conclude that requiring them to defend an action in Illinois would not be "fair, just, and reasonable" and would therefore violate the Illinois Constitution.  *See Rollins*, 565 N.E.2d at 1316.  Thus, Cronic and Fagge are not amenable to service of process under Rule 4(k)(1)(A).  In light of this holding, the Court need not address federal due process concerns and now turns to Rule 4(k)(2).

  B.  <u>Amenability to Service Under Rule 4(k)(2)</u>

Cronic and Fagge are not amenable to service under Rule 4(k)(2).  Under that provision, a defendant is amenable to service of process by a federal court in a case based on a federal question if he is not subject to the personal jurisdiction in any state court of general jurisdiction and if exercising personal jurisdiction would not offend the United States Constitution or federal law.  A defendant can establish he is not amenable to service under Rule 4(k)(2) by naming another state where the suit could proceed, which would amount to consent to personal jurisdiction there.  *ISI Int'l, Inc. v. Borden Ladner Jervais, LLP*, 256 F.3d 548, 551 (7th Cir. 2001).  If a defendant

names a state, it is then the plaintiff's burden to show that the defendant is not, indeed, subject to the jurisdiction of the named state's courts.

In this case, the Cronic and Fagge have confirmed that they are subject to the personal jurisdiction of courts in the state of Georgia, the state in which they reside, and Wiley has not produced any evidence or argument to the contrary. Thus, Cronic and Fagge are not amenable to service of process under Rule 4(k)(2).

## IV. Conclusion

For the foregoing reasons, the Court **GRANTS** the motion to dismiss (Doc. 17), **DISMISSES** the claims in this case against defendants Cronic and Fagge for lack of personal jurisdiction and **DIRECTS** the Clerk of Court to enter judgment accordingly at the close of the case.

**IT IS SO ORDERED.**
**DATE: February 15, 2008**

s/ J. Phil Gilbert
**J. PHIL GILBERT**
**DISTRICT JUDGE**